UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PAULINE G. FEIST** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-7060 c/w 11-1585** |
| **STATE OF LOUISIANA, DEPARTMENT OF JUSTICE** | **SECTION: "S" (1)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, State of Louisiana, Department of Justice (Doc. #104), is **GRANTED** and plaintiff's claims are **DISMISSED WITH PREJUDICE.**

## BACKGROUND

This matter comes before the court on a motion for summary judgment filed by the defendant, the State of Louisiana, Department of Justice (the "LaDOJ"). The LaDOJ argues that plaintiff cannot prevail on her claims of failure to provide a reasonable accommodation for an alleged disability on the basis of race and/or gender, disparate pay based on race and gender, or discharge due to race discrimination and in retaliation for filing previous EEOC complaints.

Plaintiff, Pauline Feist, is an African-American female who was employed as a staff attorney at the LaDOJ's New Orleans office. In 2005, plaintiff developed a chronic knee condition that limited her ability to walk. In 2008, the LaDOJ moved its New Orleans, Louisiana office to 400 Poydras Street where the majority of the employee parking was approximately two blocks away from the office. There were a limited number of on-site parking spaces that were reserved for administrative employees and the most senior attorneys. On July 30, 2008, plaintiff informed the LaDOJ of her knee condition, and requested an on-site parking space. The LaDOJ asked for supporting documentation from plaintiff's physician, and when the documentation was insufficient,

her request was denied. The LaDOJ suggested that she park in the building's handicapped spots until a permanent parking space could be obtained for her.

On September 21, 2008, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that the LaDOJ denied her a reasonable accommodation due to her race and gender, because only white males were allocated parking spaces in the building. In her complaint, plaintiff alleges that there were available on-site parking spaces and that on-site parking spaces were given to white, non-disabled males. Plaintiff also alleges that the LaDOJ created false titles to justify the allocation of the on-site parking spaces.

On November 3, 2008, plaintiff filed a Charge of Discrimination with the EEOC alleging that she was discriminated against because of her race and gender in that she was paid less than similarly-situated employees. In her complaint, plaintiff alleges that she was paid less than lesser-qualified, white staff attorneys at the LaDOJ.

Plaintiff filed another Charge of Discrimination with the EEOC on April 14, 2009, in which she alleges that she was discharged because of her race and in retaliation for filing a previous Charges of Discrimination with the EEOC. Plaintiff alleges in her complaint that the stated reason for her termination, i.e. "messing up a case," was a pre-text for discrimination because similarly-situated white employees who failed to win cases were not terminated.

On October 28, 2009, plaintiff filed this suit in the United States District Court for the Eastern District of Louisiana against the LaDOJ. Plaintiff claims: (1) that the LaDOJ violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., by discriminating against her in terms of her salary and retaliating against her for complaining about the disparate

wages by terminating her; and, (2) that the LaDOJ owes her damages because it violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), by not attempting to accommodate her with an on-site parking space and took adverse actions against her due to her disability. Plaintiff has also filed amended complaints in which she alleges that she was terminated due to discrimination based on her gender and disability and/or perceived disability, and in retaliation for participating in the protected activity of requesting reasonable accommodation for her disability.

## ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.    Failure to Exhaust Administrative Remedies**

Before filing a lawsuit under Title VII, a plaintiff must first exhaust her administrative remedies with the EEOC . Complaints that are not addressed in or reasonably related to a Charge of Discrimination filed with the EEOC cannot form the basis of Title VII complaints in a subsequent lawsuit. See Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970).

In her EEOC charges, plaintiff alleges: (1) that she was denied a reasonable accommodation of an on-site parking space due to her race and gender; (2) that she was discriminated against in terms of wages due to her race and gender; and, (3) that she was terminated because of her race and in retaliation for filing previous EEOC complaints.

In her complaint and amended complaints, plaintiff includes the following allegations that are not included in a Charge of Discrimination that she filed with the EEOC: (1) that she was terminated because of her gender; and, (2) that she was terminated because of her disability and/or perceived disability. Because these allegations were not included in her EEOC complaints, they cannot form the basis of claims in this lawsuit, and such claims are DISMISSED WITH PREJUDICE.

**C.    Plaintiff's ADA Failure to Accommodate Claims**

Plaintiff alleges that the LaDOJ violated the ADA in 2008, by denying her the reasonable accommodation of an on-site parking space due to her race and gender.

Title I of the ADA prohibits covered entities from committing employment discrimination on the basis of disability, which discrimination includes "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose undue

hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(a).  "An employer's obligation to provide a 'reasonable accommodation,' when triggered, contemplates changes to an employer's procedures, facilities, or performance requirements that will permit a qualified individual with a disability to perform the essential functions of his or her job." Burch v. Coca-Cola Co., 119 F.3d 305, 314 (5th Cir. 1997).  An employer violates Title I of the ADA if it fails to reasonably accommodate an employee, unless the employer can demonstrate that the accommodation causes undue hardship. Id.; see also Riel v. Elec. Data Sys. Corp., 99 F.3d 678, 681-82 (5th Cir. 1996).

To establish a *prima facie* case for failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate her disability." E.E.O.C. v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005).  As to the third element, "the ADA requires that the employer and employee engage in an interactive process to determine a reasonable accommodation." Id. (quoting Baert v. Euclid Beverage, Ltd., 149 F.3d 626, 633 (7th Cir. 1998)).  An employer's unwillingness to engage in a good faith interactive process may lead to a failure to reasonably accommodate an employee in violation of the ADA. Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 736 (5th Cir. 1999).  However, the employer cannot be found to have violated the ADA when the employee is responsible for the breakdown of the interactive process. Id.

In 2008, Congress enacted the ADA Amendments Act of 2008, which amended the ADA as to claims arising on or after January 1, 2009. Amsel v. Tex. Water Dev. Bd., 464 Fed. Appx. 395, n. 2 (5th Cir. 2012).  Plaintiff's ADA failure to accommodate claim arose in 2008.  Thus, the pre-amendment version of the ADA and the jurisprudence interpreting it apply to her claim.

### 1.     Qualified Individual with a Disability

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life functions of such individual; (B) a record of such an impairment; or (C) being regarding as having such impairment." 42 U.S.C. § 12102. "[T]he impairment must be substantially limiting at the time of the requested accommodation." Burch, 119 F.3d at 315.

Prior to the ADA Amendments Act of 2008, which added a definition for "major life activities" to the ADA, the EEOC promulgated regulations that defined "major life functions" under the version of the ADA that applies in this case. Under those regulations, walking is classified as a major life function. Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995) (citing 29 C.F.R. § 1630.2(i)). Further, the definition of "substantially limits" includes "significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity." Id. (citing 29 C.F.R. § 1630.2(j)(1)(ii)).

Plaintiff contends that her knee condition is a disability under the ADA, because it causes a significant and permanent limitation of her ability to walk. She claims that it "significantly limited the amount and kind of walking [she] was able to do." Thus, she has demonstrated that she was a qualified individual with a disability.

### 2.     Employer Was Aware of the Disability

The LaDOJ admits that it was aware of plaintiff's difficulty walking due to her knee condition.

### 3.     **Failure to Accommodate**

Plaintiff alleges that the LaDOJ failed to reasonably accommodate her disability in violation of the ADA by refusing to give her an on-site parking space.

In Burch, 119 F.3d at 314, the United States Court of Appeals for the Fifth Circuit explained the ADA's requirement of "reasonable accommodation" as follows:

> The ADA, its implementing regulations, and the EEOC's interpretive guidance make clear that an employer's obligation to provide a "reasonable accommodation," when triggered, contemplates changes to an employer's procedures, facilities, or performance requirements that will permit a qualified individual with a disability *to perform the essential functions of his or her job*. In all cases a reasonable accommodation will involve a change in the status quo, for it is the status quo that presents the very obstacle that the ADA's reasonable accommodation provision attempts to address.

(emphasis added).

The applicable verison of the ADA provides that a "reasonable accommodation" may include:

> (A) making existing facilities used by employees readily accessible and usable to individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

The applicable regulations further state that "reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with

a disability to perform the essential functions of that position." Burch, 119 F.3d at 314 (citing 29 C.F.R. § 1630.2(o)(1)(ii)).

"The ADA is a federal discrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to persons without disabilities." Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 161 (5th Cir. 1996). The law "requires employers to reasonably accommodate limitations, not disabilities." Id. The distinction between limitations and disabilities is critical, "because the existence *vel non* of a disability or impairment is material to a reasonable accommodation claim only insofar as it *limits the employees ability to perform his or her job*." Burch, 119 F.3d at 314 (emphasis added).

Plaintiff alleges that her request for an on-site parking space was a request for a reasonable accommodation because she had to walk two blocks one or more times per day to and from her car, which caused her great pain. *She does not allege or demonstrate that the parking situation limited her ability to perform the essential functions of her job*. Therefore, the LaDOJ is entitled to summary judgment on plaintiff's failure to accommodate claim, and that claim is DISMISSED WITH PREJUDICE.

**D.     Plaintiff's Title VII Claims**

Plaintiff alleges that she was paid less than similarly situated LaDOJ employees who were not of her same race and/or gender. She also alleges that she was terminated because of her race and in retaliation for filing pervious Charges of Discrimination with the EEOC.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff bringing claims under Title VII can use either direct or circumstantial evidence to prove her case of intentional discrimination. Portis v. First Nat'l Bank of New Albany, Miss., 34 F.3d 325, 328 (5th Cir. 1994). Direct evidence is "evidence which, if believed proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002). "Because direct evidence is rare, a plaintiff ordinarily uses circumstantial evidence to meet the test set out in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973)." Id. However, "the McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." Id. (quoting Trans World Airlines, Inc. v. Thurston, 105 S.Ct. 613, 621-22 (1984)).

Plaintiff has not submitted any facts that provide direct evidence of the LaDOJ's alleged discrimination or retaliation. Instead, plaintiff attempts to demonstrate wage differentials, and she alleges that the LaDOJ's stated reason for her termination, i.e. that she "messed up a case," was a pretext, and that she actually was terminated because of her race and in retaliation for her filing prior Charges of Discrimination with the EEOC. Because this is a circumstantial evidence "pretext" case, the McDonnell Douglas test applies. See Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).

In McDonnell Douglas Corp., the Supreme Court of the United States "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." St. Mary's Honor Ctr. v. Hicks, 113, S.Ct. 2742, 2746 (1993). Under this evidentiary framework, the plaintiff must first establish a *prima facie* case of discrimination or retaliation. Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2106 (2000). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to

9

produce a legitimate, nondiscriminatory reason for the conduct. See Reeves, 120 S.Ct. at 2106. This burden is one of production, not persuasion, and involves no credibility assessment. Id. If the defendant meets the burden, the presumption raised by the plaintiff's *prima facie* case disappears. Id.

Once the employer produces sufficient evidence to support a nondiscriminatory explanation, the plaintiff is given an "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. (internal quotation and citation omitted). The plaintiff must then demonstrate that the adverse employment action would not have occurred "but for" plaintiff's protected activity. Septimus v. Univ. of Hous., 399 F.3d 601, 608 (5th Cir. 2005).

### 1.     Wage Claims

To establish a *prima facie* case of discrimination in compensation, a plaintiff must demonstrate: (1) that she was a member of a protected class; and, (2) that she was paid less than a non-member for work requiring substantially the same responsibility. Taylor v. United Parcel Serv., Inc., 554 F.3d 510, 522 (5th Cir. 2008) (citing Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984). A plaintiff claiming disparate treatment in compensation under Title VII must demonstrate that her "circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." Id. at 523 (citing Little v. Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991)). An individual plaintiff pursuing an individual claim for disparate pay "msut present *prima facie* evidence that [her] pay was lower than *specific* employees who are not members of the protected class." Id.

Plaintiff has failed to establish a *prima facie* case for disparate compensation based on race or gender. She has not presented any evidence that her pay was lower than any specific employees in nearly identical circumstances who are not members of the protected classes of female and African American. Indeed, the LaDOJ has presented evidence regarding the wages of several of its attorneys, and this evidence shows that plaintiff's wages were not substantially different from other similarly-situated attorneys. Because plaintiff has not established a *prima facie* case for disparate compensation based on race or gender, those claims are DISMISSED WITH PREJUDICE.

### 2. Discharge Claims

#### a. Racial Discrimination

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show by a preponderance of the evidence that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly situated employee who was not a member of her protected class. McDonnell Douglas, 93 S. Ct. at 1824.

##### i. Protected Class

As an African-American, plaintiff is a member of a protected class. See 42 U.S.C. §§2000e-2.

##### ii. Qualified for Her Position

Plaintiff has a juris doctor degree and a master of laws degree. There is no dispute that she was qualified for her position as a staff attorney at the LaDOJ.

### iii. Adverse Employment Action

Plaintiff suffered an adverse employment action when she was terminated. See Burger v. Cent. Apartment Mgmt., Inc., 168 F.3d 875, 878 (5th Cir. 1999) (Title VII addresses only "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating).

### iv. Treated Less Favorably than a Similarly Situated Employee Who Was Not a Member of Her Protected Class

In Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5 th Cir. 2009), the United States Court of Appeals for the Fifth Circuit explained that in Title VII discrimination cases, a plaintiff who proffers a fellow employee as a comparator must

> demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

(internal citations omitted).

Plaintiff does not offer any examples of instances where fellow employees were treated differently under nearly identical circumstances. Therefore, plaintiff has not satisfied the fourth prong of the McDonnell Douglas inquiry, and has failed to establish a *prima facie* case of racial discrimination under Title VII. The LaDOJ's motion for summary judgment is GRANTED as to

plaintiff's racial discrimination termination claim bought under Title VII, and that claim is DISMISSED WITH PREJUDICE.

### b.     Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008). A plaintiff who is unable to show a *prima facie* case cannot survive a summary judgment challenge. Byers v. Dallas Morning News, Inc., 209 F.3d 419, 429 (5th Cir. 2000).

#### i.     Protected Activity

An employee engages in a protected activity if she opposes any unlawful employment practice, or makes a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

Plaintiff engaged in the protected activity of filing previous Charges of Discrimination with the EEOC.

#### ii.    Adverse employment action

For an "adverse employment action" to be actionable under Title VII's retaliation provision, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006).

Plaintiff has satisfied the second prong for establishing a *prima facie* case for retaliation, in that she alleges that she was terminated in retaliation for filing previous Charges of Discrimination with the EEOC.

### iii.     Causal Link

To establish the causal link element of a *prima facie* case of a retaliation claim, the plaintiff need not meet the "but for" standard. Stroud v. BMC Sorftware, Inc., 2008 WL 2325639 (5th Cir. 6/6/2008). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." Cooper v. United Parcel Serv., Inc., 368 Fed. Appx. 469 (5th Cir. 2010) (quoting McCoy v. City of Shreveport, 492 F.3d 55,  562 (5th Cir. 2007)). However, "temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity." Thompson v. Sumervell Cnty., Tx., 2011 WL 262357 (5th Cir. 7/1/2011) (citing Clark Cnty. Sch. Dist. v. Breeden, 121 S.Ct. 1508, 1511 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close.") (internal quotations and citation omitted).

Plaintiff filed her pre-termination Charges of Discrimination with the EEOC on September 21, 2008, and November 3, 2008.  She was terminated five months later, on April 14, 2009.  Plaintiff has not shown a temporal proximity sufficient to establish a *prima facie* case because the time lapse between her filing the Charges of Discrimination with the EEOC and her termination is too attenuated.  Further, plaintiff has not offered any other evidence of a causal link to demonstrate that she would not have been terminated but for her filing previous Charges of Discrimination with the

EEOC. Therefore, the LaDOJ is entitled to summary judgment on plaintiff's retaliatory discharge claim, and that claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by defendant, State of Louisiana, Department of Justice (Doc. #104), is **GRANTED** and plaintiff's claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this  21st  day of September, 2012.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**